UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
RELIANCE COMMUNICATIONS LLC,

                              Plaintiff,                  **MEMORANDUM AND ORDER**

          -against-                      24-CV-4433(SIL)

SONIM TECHNOLOGIES, INC.,

                          Defendants.
-------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this diversity-unfair competition litigation is Defendant Sonim Technologies, Inc.'s ("Sonim" or "Defendant") motion to dismiss the Amended Complaint ("Am. Compl."), Docket Entry ("DE") [25], for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). *See* DE [37]. Plaintiff Reliance Communications LLC ("Reliance" or "Plaintiff") opposes Sonim's motion. *See* DE [38]. In the event that Defendant's motion is granted, Reliance requests leave to file a second amended complaint. *See* Plaintiff's Memorandum in Opposition, ("Pl.'s Mem."), DE [38] at 18-19.

By way of Complaint dated June 21, 2024, Plaintiff commenced this action asserting five causes of action for: (1) violation of the Defend Trade Secrets Act pursuant to 18 U.S.C. § 1831, *et seq.*, (2) common law misappropriation of trade secrets, (3) unfair competition, (4) breach of contract, and (5) unjust enrichment, against Sonim and former Defendants Chuan Wang ("Wang"), Teleepoch Limited LLC ("Teleepoch") and Uni America LLC ("Uni"). *See* Complaint, DE [1]. On December 2, 2024, Plaintiff filed an Amended Complaint solely against Sonim

asserting claims for (1) unfair competition and (2) unjust enrichment.  *See* Am. Compl.; *see also* Notice of Voluntary Dismissal Without Prejudice Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), DE [17]; Elec. Order, Nov. 12, 2024.  For the reasons set forth herein, Defendant's motion to dismiss is granted in part and denied in part as set forth below, and Plaintiff's request to file a second amended complaint is denied.

## I.    BACKGROUND

### A.    Facts

Unless otherwise stated, the facts are drawn from the Amended Complaint.

#### 1.    The Parties and Relevant Non-Parties

Reliance, a limited liability company organized under the laws of New Jersey, maintains a primary place of business in Hauppauge, New York, and engages in original equipment manufacturing.  *See* Am. Compl. ¶¶ 2,7.  Plaintiff holds itself out as a market leader in wireless communications products.  *Id*. at ¶ 2.  Sonim is a Delaware corporation with its principal office in San Diego, California.  *Id*. at ¶ 8.  Defendant's largest shareholder, AJP Holding Company LLC ("AJP"), owns nearly 50% of Sonim's shares and is controlled by the Wang family.[1]  *Id*.  Previously dismissed Defendant Wang is the Chairman and CEO of two California corporations, Teleepoch and Uni.  *Id*. at ¶ 9.  According to Reliance, Teleepoch and Uni are

---

[1] Plaintiff makes multiple allegations "upon information and belief."  *See* Am. Compl ¶¶ 1, 2, 8-11, 13, 54, 60-61, 68, 70, 73, 75, 88.  Reliance is not precluded from doing so "where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).  Accordingly, the Court considers these facts herein.

controlled by Wang, and, during the relevant time period the two companies were used interchangeably to manufacture devices for Reliance. *Id.* at ¶¶ 10-11.

### 2.    Relevant Agreements

The crux of Plaintiff's claims is that Sonim, Uni, Teleepoch, and AJP were involved in an "elaborate scheme to steal confidential and proprietary information created by [Reliance]." *Id.* at ¶ 1. In or about 2017, Plaintiff retained Teleepoch and Uni to assist in the "design, testing, and manufacturing" of select Reliance products in Shenzhen, China at Teleepoch's facility (the "Shenzhen Facility"). *Id.* at ¶ 2. In or around February 23, 2016, Reliance and Teleepoch entered a Mutual Non-Disclosure Agreement (the "NDA"), with Wang executing the NDA on Teleepoch's behalf.[2] *Id.* at ¶ 18. Under the NDA, Plaintiff and Teleepoch agreed to transmit confidential information to those who needed to know "for the purpose of evaluating the potential business venture." *Id.* at ¶ 21. Plaintiff relied on the NDA in disclosing confidential and proprietary information to Teleepoch and Uni. *Id.* at ¶ 18. Further, on or about March 27, 2017, Reliance and Teleepoch agreed to a term sheet for the production of a new wireless device, under which Teleepoch confirmed that Plaintiff's "products' industrial design[s], hardware design[s], software design[s], and features, are exclusive to Reliance." *Id.* at ¶¶ 22-23.

Over several years, Teleepoch manufactured numerous wireless communication products for Reliance using specifications provided by Plaintiff. *See*

---

[2] The NDA defines confidential information, in part, as "[a]ll information shared by [Plaintiff] to [Teleepoch] related to any proprietary and confidential information belonging to any wireless carrier. . .". Am. Compl. ¶ 19.

i*d*. at ¶¶ 24-25.  Each product spent approximately ten weeks in development, after which, Teleepoch sent it to the Federal Communications Commission ("FCC") for approval.  *Id*. at ¶ 26.  Pursuant to the NDA, Teleepoch manufactured approximately 50 products for Reliance, using the same manufacturing framework.  *Id*. at ¶ 28.

        3.        <u>The Orbic Speed 5G Hotspot and Orbic Trophy 5G Mobile Phone</u>

In 2022, with Teleepoch's manufacturing efforts, Reliance released the Orbic Speed 5G Hotspot (the "Orbic Hotspot").  *Id*. at ¶¶ 29-30.  The device has a unique antenna placement and, according to Plaintiff, at the time of its release was the "only hotspot on the market that was capable of working with the C-Band 5G frequency." *Id*. at ¶¶ 32, 34.  In 2023, Reliance's Chief Technology Officer ("CTO"), who is not identified by name, developed a new technology that would create a high-performance mmWave signal using a single antenna module, instead of the then-industry standard two-antenna module.  *Id*. at ¶¶ 35-36.  In or about November 2023, Reliance's CTO informed Teleepoch's chief engineer of the new technology so it could be incorporated into new products that Teleepoch designed for Reliance.  *Id*. ¶ 37. This included the Orbic Trophy 5G Mobile Phone (the "Orbic Mobile").  *Id*.  Teleepoch ensured Reliance that only approximately ten of its employees would be permitted access to the new technology.  *Id*.  Those employees were subject to the NDA.  *Id*. After being told by a Teleepoch or Uni employee that the new model would not work, Plaintiff's CTO provided directions on how to implement the new technology through various email communications and in-person instruction.  *Id*. at ¶¶ 39-44.  After these communications, and continued refining of the design, on approximately January 16,

4

2024, the new technology yielded performance numbers that met major wireless carriers' requirements. *Id.* at ¶ 44.

### 4. Sonim's Alleged Misuse of Reliance Confidential and Proprietary Information

According to Plaintiff, Sonim originally manufactured mobile communication devices for first responders. *Id.* at ¶ 47. From its creation in 2019, Sonim continued to lose increasing amounts of money. *See id.* at ¶¶ 49-51. By the end of 2021, its financial condition was "dire." *Id.* at ¶ 51.[3] In October 2021, Wang along with family members, apparently through AJP, approached Sonim for the purposes of investing in, or purchasing, Sonim. *Id.* at ¶¶ 53-54. In April 2022, AJP entered a subscription agreement to purchase $17,500,000 worth of Sonim's common stock. *Id.* at ¶ 58. Reliance alleges that Wang's son, Jeffrey Wang, received a seat on Sonim's board and was appointed Chairman as a part of AJP's investment. *Id.* at ¶ 60. Following this investment, Teleepoch began designing and manufacturing for Sonim. *Id.* at ¶ 61. In fact, on a date Plaintiff does not specify, certain unidentified Reliance employees witnessed Teleepoch personnel designing the Sonim H500V (the "Sonim Hotspot"). *Id.* at ¶ 63. It appeared to be an exact copy of the Orbic Hotspot.[4] *Id.* Plaintiff alleges that in April 2024, a Reliance employee witnessed Teleepoch personnel working on the Sonim Hotspot while reviewing instructions to build Plaintiff's single antenna

---

[3] Plaintiff cites to Sonim's March 21, 2022 10-K report filed with the Securities Exchange Commission which highlights that Defendant had "an accumulated deficit of $234.8 million as of December 31, 2021." *See* Am. Compl. ¶ 51.

[4] The Amended Complaint includes a photo, allegedly taken by Reliance employees at the Shenzhen Facility, which displays the Sonim Hotspot on the same desk as the Orbic Mobile. *Id.* at ¶¶ 66-67.

module.  *Id.* at ¶ 69.[5]  When Reliance's CEO confronted Wang about it, he (Wang) denied that Teleepoch was even working on a hotspot for Sonim.  *Id.* at ¶¶ 64-65.  Like Plaintiff's pioneering technology, the Sonim Hotspot uses laser direct structuring to place the antenna on the device.[6]  *Id.* at ¶ 68.  The Sonim Hotspot also incorporates Reliance's single antenna technology to meet the performance needs of major wireless providers.[7]  *Id.* at ¶¶ 44, 68-69.  After taking a hiatus from submitting newly developed products to the FCC for approval, Plaintiff alleges that Sonim submitted a product that appeared to be a copy of the Orbic Hotspot.  *Id.* at ¶ 62.  According to Reliance, Sonim misappropriated Reliance's proprietary combination of precise angling of its single antenna module and its custom programming prior to the information becoming public.  *Id.* at ¶ 73.

### B.    **Procedural History**

Reliance commenced this action on June 21, 2024 against Sonim, Wang, Teleepoch and Uni.  *See* DE [1].  On November 11, 2024, Plaintiff voluntarily dismissed its claims against Defendants Wang, Teleepoch, and Uni pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).  *See* DE [17].  That same day, Sonim moved to dismiss Plaintiff's complaint.  *See* DE [20].  On December 2, 2024, Plaintiff filed the Amended Complaint.  *See* DE [25].  Defendant now seeks to dismiss the Amended Complaint

---

[5] It is unclear whether this employee was one of the employees who witnessed Teleepoch personnel designing the Sonim Hotspot.

[6] While Plaintiff pleads that Sonim copied Reliance's antenna placement process, Plaintiff explains that this technology is separate from its single antenna module, and not the issue in this action.  *Id.* at ¶ 68.

[7] Plaintiff alleges that Sonim first began replicating the Orbic Hotspot, which had two antenna modules, and when Teleepoch learned of Plaintiff's single antenna module, it incorporated the new technology into Sonim's Hotspot.  *Id.* at ¶ 70.

and Plaintiff opposes. *See* Defendant's Memorandum of Law in Support of its Motion to Dismiss, ("Defendant's Memorandum" or "Def.'s Mem.") DE [37-1]; "Pl.'s Mem.", DE [38].

## II.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. But a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*quoting Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'" *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (*quoting LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)). Nevertheless, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are

7

inadequate and subject to dismissal.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Further, the court may only consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated ... by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.*, documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted).  A complaint incorporates a document by reference when it "makes a clear, definite, and substantial reference to the document."  *Serrata v. Givens*, No. 18-CV-2016(ARR), 2019 WL 1597297, at *3 (E.D.N.Y. Apr. 15, 2019) (internal citation omitted).  Where a complaint quotes heavily from a document, courts in this Circuit consider that document incorporated by reference.  *See, e.g.*, *My Mavens, LLC v. Grubhub, Inc.*, No. 20 Civ. 4657(PGG), 2023 WL 5237519, at *3 (S.D.N.Y. Aug. 14, 2023); *Tavenner v. Int'l Bus. Machines Corp.*, No. 21 Civ. 6345(KMK), 2022 WL 4449215, at *2 (S.D.N.Y. Sept. 23, 2022), No. 22-2318, 2023 WL 4984758 (2d Cir. Aug. 4, 2023).

## III.    DISCUSSION

Defendant moves to dismiss Plaintiff's remaining unfair competition and unjust enrichment causes of action. *See generally*, Def.'s Mem.  Reliance opposes, and requests leave to file a second amended complaint in the event that Defendant's motion is granted. *See* Pl.'s Mem. at 18.  For the reasons set forth herein, Defendant's motion is granted in part and denied in part as explained below, and Plaintiff's request to file a second amended complaint is denied.

## A.    Defendant's Motion to Dismiss

### 1.    Documents and Photos Incorporated By Reference

As an initial matter, the Court considers whether the parties' supporting documents beyond the Amended Complaint should be treated as incorporated into the Amended Complaint or otherwise considered.  In support of its motion to dismiss, Defendant submits a December 12, 2024 letter from Sonim's attorney to Plaintiff's counsel demanding that the lawsuit be withdrawn and containing several photographs, which Defendant then incorporates into it Memorandum of Law requesting that they be considered herein.  *See* Def.'s Mem. at 3-4; DE [37-3] at 3-5. The photographs detail the placement of the single antenna module in the Sonim Hotspot compared to that of the Orbic Hotspot.  *See* Def.'s Mem. at 3-4.  In opposition, Plaintiff submits its December 20, 2024 reply letter, a Declaration of its CTO, Venkat Kalkunte,[8] and a Sonim SEC Schedule 13-D.  *See* DE [38-1],[38-3],[38-4].

The Court declines to consider any of these submissions on a Rule 12(b)(6) motion.  Defendants' attorney letter and the photographs contained therein are both beyond the pleadings, and in any event, are not authenticated in a way that the Court could consider them.  Plaintiff's extraneous submissions fare no better.  The December 20, 2024 reply letter is just a characterization of Defendant's December 12, 2024 letter, and there is no meaningful way for the Court to evaluate the Kalkunte Declaration in the context of a motion directed to the pleadings.  Under these

---

[8] It appears that Venkat Kalkunte may have been Reliance's CTO at the time of the incidents underlying the Amended Complaint but it is not entirely clear.

circumstances, the Court declines to consider any of the supporting documentation beyond the Amended Complaint itself.

### 2.    Unfair Competition

Initially, the Court addresses Plaintiff's unfair competition cause of action. New York law recognizes two theories of common-law unfair competition:  palming or passing off, and misappropriation.[9] *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 225 (S.D.N.Y. 2023) (citation omitted).  Reliance claims the latter. *See* Am. Compl. ¶¶ 75-80.  To state a cause of action for unfair competition by misappropriation, a plaintiff must allege that the defendant:  (1) misappropriated the plaintiff's labors, skills, expenditures, or goodwill; and (2) displayed some element of bad faith in doing so.  *CDC Newburgh Inc.*, 692 F. Supp. 3d at 226.  "Although claims of unfair competition often allege misappropriation of trade secrets or ideas, a claim may be based on misappropriation of information not rising to that level, such as client lists, internal documents, and business strategies," *Salonclick LLC v. SuperEgo Mgmt. LLC*, No. 16 Civ. 2555(KMW), 2017 WL 1906865, at *4 (S.D.N.Y. May 8, 2017) (citation omitted), so long as a plaintiff can "establish that a defendant misappropriated or misused the plaintiff's property or the fruit of its labors and expenditures." *Big Vision Private Ltd. v. E.I. Dupont De Nemours & Co.*, 610 Fed. App'x 69, 71 (2d Cir. 2015); *see Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F. Supp. 2d 500, 503 (E.D.N.Y. 2009).  The "gravamen" of the cause of action is that the

---

[9]The parties agree that New York state law applies.  *See Henneberry v. Sumitomo Corp. of Am.*, No. 04-Civ-2128(PKL), 2005 WL 991772, at *5, n.3 (S.D.N.Y. Apr. 27, 2005) ("Where the parties so assume, the Court need not address choice of law *sua sponte*.").

defendant's misappropriation was in bad faith. *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496, 510 (S.D.N.Y. 2018).    The claim is "broad and flexible" and is more fact-dependent than other causes of action. *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001).

Here, the parties dispute whether Plaintiff has satisfied the second element, namely that Reliance properly alleged that Sonim acted in bad faith. *See* Def.'s Mem. at 5-7; Pl.'s Mem. at 10-14. Defendant asserts that Plaintiff failed to plead a single fact that Sonim acted in bad faith or knew that the technology it acquired from Teleepoch and Uni was misappropriated from Plaintiff. *See* Def.'s Mem. at 6; Defendant's Reply in support of the Motion to Dismiss ("Def.'s Reply"), DE [39], at 5-6. The Court disagrees.

Initially, the Amended Complaint alleges facts that allow the Court to reasonably infer the first element of Plaintiff's unfair competition claim–*i.e.*, that Sonim misappropriated Plaintiff's confidential and proprietary "know-how" regarding its single antenna module. *See* Am. Compl. ¶¶ 61-68, 75-79 (alleging that after Teleepoch began manufacturing for Sonim, Defendant submitted a new product for FCC approval that appeared to be a copy of the Orbic Hotspot, and that Reliance employees observed Teleepoch personnel working on Sonim's Hotspot in close proximity to Plaintiff's devices that utilize its confidential and proprietary information). Indeed, Defendant's motion does not dispute that the Amended Complaint pleads the first element of an unfair competition claim.

11

Similarly, the Court can reasonably infer that Sonim acted in bad faith when misappropriating Plaintiff's technology.  At its core, Reliance alleges that Wang used three companies he controls with his family, Defendant Sonim, Teleepoch and Uni, to obtain Plaintiff's confidential information pursuant to the NDA, which Wang signed on Teleepoch's behalf, to obtain cutting edge technology.  In fact, Teleepoch's staff could not even implement the new technology without extensive instruction from Plaintiff, and then turned around and used that same technology to revitalize Sonim, which had been a failing company operating in a different market until that point. Moreover, when Wang was asked about it, he denied that Teleepoch was working for Sonim, despite an eyewitness account to the contrary.  These allegations are sufficient to establish bad faith to defeat Defendant's motion to dismiss.

In reaching this conclusion the court acknowledges Sonim's argument that that it could not have copied the "precise angling and orientation" of the antenna on the Orbic Hotspot, because the antenna in Sonim's is oriented on the front of the device and is perpendicular to the circuit board, while the antenna in Reliance's is at a 40-degree angle to the circuit board and in the top right corner of the device, and the photographs it submits in support.  The Court is unable to resolve the parties' disputed positions on this point on pleadings however, without the benefit if relevant admissible evidence from all sides. Accordingly, this question is better addressed at summary judgment or trial as appropriate.

Further, the cases Sonim relies upon *Bytemark, Inc. v. Xerox Corp.*, 342 F. Supp. 3d 496 (S.D.N.Y. 2018) and *Schroeder v. Pinterest*, 133 A.D.3d 12, 17 N.Y.S.3d

678 (1st Dep't 2015), are distinguishable. *See* Def.'s Mem. at 5-7. *Bytemark* was a patent infringement suit where the Court had to consider whether the patent infringement claims and unfair competition claims sufficiently overlapped to warrant preemption (which is further discussed below) and whether there was sufficient evidence of bad faith. *See Bytemark* at 506-11. And there, the Court actually denied the motion as to the misappropriation—unfair competition claim as to one of the defendants based on its connection to the alleged unlawful conduct, similar to Sonim's alleged conduct here. *See id.* at 511 (denying motion as to Conduent, which was an entity related to those who entered the underlying confidentiality agreements).

In *Schroeder*, while the corporate recipient of the investment was dismissed from that case on the basis that the relationship between the plaintiff and that company was too attenuated, the relationship here is closer. *Schroder*, 133 A.D.3d at 327-29, 17 N.Y.S.3d at 690-92. Sonim received funds from AJP, making the Wangs substantial owners of Sonim while Wang himself was also Chairman and CEO of Teleepoch and Uni, the former of which had and NDA with Plaintiff, and based on that, access to a variety of Reliance's confidential information. Then Teleepoch started manufacturing products for Sonim similar to Plaintiff's, as confirmed by certain unidentified Reliance employees and despite Wang's statement to the contrary. Taking Reliance's allegations as true, the Court concludes that the relationship between Teleepoch and Sonim are sufficiently intertwined that the claim may be sustained. Accordingly, the motion to dismiss the unfair competition cause of action is denied.

### 3.    Unjust Enrichment

Next, the Court turns to the unjust enrichment cause of action.  "To state a claim for unjust enrichment under New York law, a plaintiff must allege (1) 'that the defendant was enriched at the plaintiff's expense' and (2) 'that equity and good conscience require the plaintiff to recover the enrichment from the defendant.'" *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 579-80 (E.D.N.Y. 2014) (quoting *Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009)). "When considering an unjust enrichment claim, a court's 'essential inquiry' is one of 'equity and good conscience.'" *Marini v. Adamo*, 12 F. Supp. 3d 549, 552 (E.D.N.Y. 2014), *aff'd*, 644 F. App'x 33 (2d Cir. 2016) (quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393 (1972)).

A cause of action for unjust enrichment "sounds in quasi-contract and cannot lie where an enforceable contract governs the disputed matter." *Speedfit LLC*, 53 F. Supp. 3d at 580 (citing *Labajo v. Best Buy Stores*, L.P., 478 F. Supp. 2d 523, 530-31 (S.D.N.Y. 2007)).  Indeed, an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.  *Mancuso v. RFA Brands*, LLC, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020) (quoting *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 740 (2012)). Nevertheless, where no contract exists between the parties, or where the existence or validity of a contract is in dispute, a party is permitted to assert equitable claims as alternative theories of liability.  *See Fishman v. Philadelphia Fin. Life Assur. Co.*, No. 11 Civ. 1283(TPG), 2016 WL 2347921, at *13 (S.D.N.Y. May 3, 2016) (citing *New Paradigm*

14

*Software Corp. v. New Era of Networks, Inc.,* 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000)).

> To this end,
>
> while privity with defendant is not required, the plaintiff must assert a connection between the parties that is not too attenuated . . . . [A] relationship is too attenuated if the parties were not connected in a manner that could have caused reliance or inducement, . . . or if they simply had no dealings with each other. . . .

*GateGuard, Inc. v. Amazon.com Inc.*, No. 21-CV-9321(JGK), 2023 WL 2051739, at *11 (S.D.N.Y. Feb. 16, 2023) (internal quotations and citations omitted).

Sonim asserts that Plaintiff cannot succeed on an unjust enrichment claim because the parties lack a "close relationship" to one another. *See* Def.'s Mem. at 8. The parties' relationship as competitors who had no direct interaction is too attenuated to support Plaintiff's unjust enrichment claim, even in light of the allegation that both companies worked with Teleepoch for manufacturing purposes. Further, there are no facts alleged suggesting the necessary reliance or inducement to support a cause of action. *See Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 448 (E.D.N.Y. 2011) (dismissing an unjust enrichment claim where an "employer benefits from misappropriated material gleaned from the former employee of a competitor, even when the defendant-employer knows or induces such misappropriation"); *Techno-Comp, Inc. v. Arcabascio*, 130 F. Supp. 3d 734, 744-45 (E.D.N.Y. 2015) (dismissing unjust enrichment claim where the pleadings are devoid of any interactions between the parties). Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment cause of action is granted.

15

4.    Federal Preemption

As an alternative, Defendant argues that both claims are preempted by federal patent or copyright law. *See* Def.'s Mem. at 9-10. "[S]tate law cannot protect 'an unpatented utilitarian or design conception which has been freely disclosed by its author to the public at large' . . . [however the Court recognizes] that all state regulation of potentially patentable but unpatented subject matter is not *ipso facto* pre-empted." *Hall v. Bed Bath & Beyond*, Inc., 705 F.3d 1357, 1371 (Fed. Cir. 2013) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 154, 109 S. Ct. 971, 979 (1989)).

> [A] state may not offer patent-like protection to intellectual creations that would otherwise remain unprotected as a matter of federal law. *Speedfit LLC v. Woodway USA, Inc.*, 226 F. Supp. 3d 149, 159 (E.D.N.Y. 2016) (quoting *Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. 2003)). If a plaintiff bases its [ ] action on conduct that is protected or governed by federal patent law, then the plaintiff may not invoke the state law remedy, which must be preempted for conflict with federal patent law. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318, 1335 (Fed. Cir. 1998), *overruled on other grounds by Midwest Industries, Inc. v. Karavan Trailers, Inc.*, 175 F.3d 1356 (Fed. Cir. 1999). Accordingly, the Federal Circuit has held that "the field of federal patent law preempts any state law that purports to define rights based on inventorship." *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co., Ltd.*, 600 F.3d 1347, 1353 (Fed. Cir. 2010).

*Spectrum Dynamics Med. Ltd. v. Gen. Elec. Co.,* No. 18-CV-11386(VSB), 2023 WL 4159358, at *9 (S.D.N.Y. June 2, 2023) (internal citations omitted). Federal "patent laws will not preempt [state law claims, however], if they include additional elements not found in the federal patent law cause of action and if they are not an impermissible attempt to offer patent-like protection to subject matter addressed by

16

federal law." *Bytemark, Inc.*, 342 F. Supp at 507-08 (holding that Plaintiff's unfair competition claim is not preempted to the extent Plaintiff premised its theories of misappropriation).

Applying these standards the Court rejects Sonim's argument. There is no patent or patent claim at issue here and the Court does not see how one could be asserted. The misappropriation claim turns more generally on the alleged unlawful taking of confidential proprietary information, not publicly available potentially patentable intellectual property. Accordingly, the elements of each cause of action are distinct and Reliance's claims are not preempted by federal patent or copyright law.

### B.    Plaintiff's Motion to File a Second Amended Complaint

In addition to opposing Sonim's motion, Reliance moves to remedy pleading deficiencies "if necessary." This motion is denied. For the reasons set forth above, one of Plaintiff's two causes of action is dismissed and the other remains. The Court cannot tell from the pleadings whether this makes leave to file second amended complaint "necessary".

In any event, to file a request to amend or supplement one's pleadings in this District the local rules require that:

> [a]ll motions made by a represented party under Fed. R. Civ. P. 15(a)(2) or (d) must also include as an exhibit (1) a clean copy of the proposed amended or supplemental pleading; and (2) a version of the proposed pleading that shows—through redlining, underlining, strikeouts, or other similar typographic method—all differences from the pleading that it is intended to amend or supplement.

17

Local Civ. Rule. 15.1. Plaintiff fails to attach its proposed second amended complaint, or a redline highlighting the changes to its request in accordance with Local Civil Rule 15.1. Accordingly, Plaintiff's motion to file a second amended complaint is denied.

## IV.   CONCLUSION

For the reasons set forth herein, Defendant's motion to dismiss is granted in part and denied in part. Specifically, Defendant's motion to dismiss is denied with respect to Plaintiff's unfair competition claim and granted as to Reliance's unjust enrichment cause of action. Moreover, Plaintiff's motion for leave to file a second amended complaint is denied.

Dated: Central Islip, New York
   February 25, 2026       **SO ORDERED.**

             /s/ Steven I. Locke
             STEVEN I. LOCKE
             United States Magistrate Judge